PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ALETHEA SARGENT (CABN 288222)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>MILTON THOMAS,<br><br>   Defendant. | CASE NO. 21-cr-243 CRB<br><br>**THE GOVERNMENT'S SENTENCING ADDENDUM AND REVISED SENTENCING RECOMMENDATION** |

# INTRODUCTION

Milton Thomas, in the words of the government's initial sentencing memorandum in this case, was a "deadly accident waiting to happen." Dkt. 43, at p. 6. Accordingly, when this case was previously before the court for sentencing, the government advocated for a 46-month sentence in federal prison. Following his guilty plea, Thomas convinced the court to permit him to remain out of custody and demonstrate good behavior in hopes of receiving a time-served sentence. In the intervening period, Thomas committed a murder. As discussed below, this heinous intervening act casts new light on Thomas's charge of conviction by, among other things, making clear that Thomas sees and uses guns for what they are: tools to threaten, injure, and kill – consistent with the statement of the CI in this case.

After some two dozen arrests and convictions for seven separate felonies (including five firearm-related convictions, one before this very Court), Thomas was arrested and pled guilty before the Court for possessing ammunition, specifically, ammunition loaded into a ghost gun's extended magazine. As described in the PSR, SFPD officers were on patrol when they received a call from a SFPD sergeant advising that he had received information from a Confidential Reliable Informant (CRI) that Thomas had just robbed, and pistol whipped, a rival drug dealer on the 400 block of Ellis Street. PSR ¶ 7. Officers located Thomas, who reached into his waistband and ducked behind a car. *Id*. at ¶ 8. Officers then heard the sound of metal hitting the ground. *Id*. at ¶ 9. Officers recovered a ghost gun with an extended magazine containing 28 cartridges from under the car. *Id*. ¶ 10. Despite the fact that he was wearing blue rubber gloves at the time (which Thomas claimed he was wearing because of Covid-19 protocols at a shelter where he worked), DNA testing indicated Thomas's DNA on the firearm. *Id.* at ¶¶ 9 & 12.

Sentencing was set for October 26, 2022. The government advocated for a sentence of 46 months. Defense argued for time served, suggesting Thomas was a changed man. The Court continued the sentencing to December 2022, to allow the defendant time to prove himself to the Court. On December 14, 2022, following a brief appearance, the Court again continued the sentencing to June 2023. On June 14, 2023, following another brief appearance, the Court continued the sentencing to December 13, 2023.

On September 16, 2023, Thomas carried a loaded firearm out of the Helen Hotel near Turk and

Jones in San Francisco, walked down the street, and, as he approached a group of congregated people, filed multiple shots at them, injuring one and killing another.

Given Thomas's history and demonstrable lack of rehabilitation or change, the government's original sentencing recommendation in October 2022 of nearly four years in prison is no longer sufficient. The cold-blooded murder he is alleged to have perpetrated on September 16 makes that all too clear. Based on the totality of the case and the 18 U.S.C. § 3553 factors at hand, the government revises its original sentencing recommendation to a term 20% above the upper end of the Guidelines range, or 68 months.

## THOMAS'S PRIOR FIREARM CONVICTION BEFORE THIS COURT

On January 21, 2004, this Court sentenced Milton Thomas to 60 months imprisonment, followed by three years of supervised release, upon defendant's conviction for violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. At the time of sentencing, the Court found that the criminal history category was IV. Case No. 3:03-CR-00082-CRB, Doc. 29. Thomas soon began racking up supervised release violations, leading to a revocation. *Id.* at Doc. 68 and 84. At the time of sentencing on these violations, the prosecutor, surveying Thomas's abhorrent criminal record, wrote: "Defendant's relentless criminal conduct will soon result in new charges and longer prison terms." Doc. 63 at 4.

## FACTS UNDERLYING CHARGE

The facts of this case are recounted in the government's original sentencing memorandum. Dkt. 43. On April 7, 2020, SFPD officers were informed by a CI that the defendant had just robbed and pistol whipped a rival drug dealer on the 400 block of Ellis Street. PSR ¶ 7. The CRI stated that the defendant was armed with a pistol. *Id*. Officers located the defendant, and, as they approached, the reporting officer observed Thomas look back in their direction, reach towards his waistband with his right hand, and duck behind a truck parked along the curb. *Id*. at ¶ 8. Officers ordered the defendant to show his hands. *Id*. at ¶ 9. The defendant remained behind the truck and the officers heard a sound of metal hitting the pavement and sliding down hill under the truck. *Id.* The defendant resisted arrest but was ultimately handcuffed, *id*. at ¶ 9, and officers located a ghost gun with an extended magazine under the truck behind which the defendant had been, *id*. at ¶ 10. The pistol was loaded with 28 rounds, with one in the chamber. *Id*. Despite the fact that he was wearing blue rubber gloves at the time (which

Thomas claimed to have been wearing because of Covid-19 protocols at a shelter where he worked), DNA testing indicated Thomas's DNA on the firearm. *Id.* at ¶¶ 9 & 12.

## PROCEDURAL HISTORY FOR THIS OFFENSE

Thomas was arrested for the instant firearm offense on April 7, 2020, right after the onset of the Covid-19 pandemic ground the state courts to a virtual halt. Around the time Thomas was charged in state court for this conduct, a primary caretaker diversion program pursuant to California Penal Code § 1001.83 was being newly rolled out in the San Francisco Superior Court. Thomas's defense counsel successfully advocated that Thomas participate in this diversion program, which results in dismissal of charges.

The United States charged the case in federal court, and a grand jury returned an indictment on June 10, 2021, alleging Thomas's illegal possession on April 7, 2020, of the ammunition as a felon. Thomas made his initial appearance on August 31, 2021. The government and Thomas's defense counsel agreed to conditions of release, including that Thomas not commit any federal, state, or local crime and that Thomas not possess any firearm, destructive device, or dangerous weapon.

On January 11, 2022, Thomas was again arrested by the SFPD on the basis of a December 20, 2021, incident. That case arose from the complaint of a civilian witness who attempted to enter a store when a man holding a Glock-style pistol, who followed him in, threatened him several times by stating, "I am going to shoot you now." The complaining witness returned to his vehicle, but the man followed him, continuing to threaten him. As the complaining witness drove away, the man followed on foot. As described below, the armed man making the threats was Milton Thomas.

An officer began to speak with the complaining witness as the complaining witness later sat in his car in front of Tenderloin Station. As the officer took the report, the complaining witness (as recorded on body-worn camera) suddenly began pointing across the street. "There he go right there, there he go right there!" The officer looked up and spotted a man diagonally across the street from him. He later wrote in his police report: "I observed S1, who I immediately recognized as Milton Thomas, walking westbound on the northside of Eddy Street toward Leavenworth Street. I recognized Thomas from prior police contacts. Upon seeing me, Thomas immediately took off on foot."

As demonstrated by body-worn camera, the officer gave chase but lost Thomas. As he slowed

down he stated on his radio: "Hey, for units, I think it might have been Milton Thomas. The victim pointed him out as he walked by." Two minutes later the officer added over the radio: "I saw who it is. It looked like Milton Thomas to me. He was close enough to where I could see him. And then he started taking off. I don't think he thought the guy was at the station, you know?"

The government moved for detention on the basis of the changed circumstance of the new arrest, a pretrial violation. The magistrate judge remanded Thomas to custody on January 19, 2022, and ordered him detained on January 24, 2022. The Court, on defense motion to release and appeal the detention order of the magistrate judge, overturned the magistrate's decision. The Court reviewed the body-worn camera and found, on the bases of the officer's distance (across the street) from Thomas when he was identified and the specific language the officer used over the radio ("think" and "might have been"), that there was no probable cause to believe that Thomas had been the assailant.

Thomas subsequently pled guilty to the felon in possession of ammunition charge, in an open plea, on April 20, 2022. Dkts. 36-37.

Sentencing was set for October 26, 2022. Dkt. 43, at p. 5. The government's sentencing memorandum asked for 46 months' imprisonment. Defense asked that the Court "defer sentencing for six months so [Thomas] can continue to demonstrate his rehabilitation and enduring law-abiding conduct to earn a non-custodial sentence." Dkt. 42, at p. 2. In a three-minute hearing, *see* Dkt. 45 (text-only minute entry), the Court effectively opted to do the latter.

The parties reconvened on December 14, 2022. In another three-minute hearing, *see* Dkt. 46 (text-only minute entry), the Court continued the sentencing to June 21, 2023.

In June 2023, the parties reconvened for a two-minute hearing. *See* Dkt. 49 (text-only minute entry). The Court continued the sentencing to December 13, 2023.

In September 2023, Thomas was charged by the San Francisco District Attorney's Office with shooting multiple people and murdering one of them.

### THE ALLEGED SEPTEMBER 16, 2023, MURDER

On September 19, 2023, San Francisco Police Department officers and investigators placed Thomas under arrest for, among other things, the September 16, 2023, murder of a 34-year old man near Market and McAllister in San Francisco. The San Francisco District Attorney's Office subsequently

1  provided the government with the reports and surveillance underlying the case against Thomas.  That
2  evidence has been produced to the defense and US Probation and will be submitted under seal for the
3  Court's review.  The evidence is summarized below.

4       On September 16, 2023, at 9:10 pm, an SFPD officer was driving eastbound on McAllister when
5  an individual fell directly in front of his vehicle at the intersection of Charles J. Brenham Plaza and
6  McAllister Street (near Market Street).  The officer exited his vehicle and noticed blood coming from
7  the right chest area of the victim, who was laying on his back.  The officer cut open the victim's shirt
8  and saw a bullet hole.  The officer attempted to render aid, but the victim died.

9       Meanwhile, a second victim, who was suffering from a gunshot wound to his right thigh,
10  approached another officer at Seventh and Market Streets.  He stated he had had been walking in the
11  area of Jones and Market Streets when he sustained the wound.  He claimed not to know the shooter and
12  stated that he was not with the first victim.  (A third officer, in fact, witnessed the second victim running
13  immediately after shooting; the victim had a weapon tucked into his waistband.  The officer then
14  observed the second victim pause by a vehicle.  The officer stated that a gun – not the alleged murder
15  weapon – was found next to the vehicle, on the sidewalk, near the vicinity of where the second victim
16  briefly stopped.)

17       Surveillance footage showed what in fact happened:  an individual dressed in a distinctive
18  trapper-style hat and purple shirt strode purposefully down the street toward a congregated group, drew
19  a weapon with an extended magazine, and fired at the group, multiple times, including at individuals as
20  they fled.  As the subsequent investigation revealed, that shooter was Milton Thomas.

 



In the days between the murder and Thomas's arrest, officers canvassed for surveillance footage in the area to identify the shooter. As shown above, footage of the shooting revealed that the shooter was wearing a distinctive trapper-style hat and a purple shirt. An individual with identical clothing was observed in surveillance footage, from that same day, obtained from the nearby Helen Hotel on Turk Street.




**Suspect on September 16, 2023 at Helen Hotel**    **Suspect on September 16, 2023 at Helen Hotel**

1    The officer who collected the footage wrote in his chronology that he recognized the individual
2    in the surveillance as Thomas. He further explained:

> I have been continuously assigned to various patrol and plain clothes assignments in Down Town San Francisco since 2015. Over the years I have seen Thomas loitering on the streets of the Tenderloin over 50 times. I have personally had interactions with Thomas and have spoken to him over 6 times. I have reviewed mugshots, photographs and surveillance footage of Thomas. Additionally, I have previously been personally involved in an investigation into Thomas regarding illegal firearms offences, and as part of that investigation conducted surveillance on him.

Thomas was arrested on September 19, 2023. On September 20, 2023, the pretrial officer in the federal case petitioned the magistrate court for a no-bail warrant, stating there was probable cause to believe Thomas had violated the conditions of his pretrial release on the basis of the alleged murder and a prior alleged shooting (discussed below). The District Attorney's Office charged Thomas with murder on September 21, 2023. At his preliminary hearing in December 2023, Thomas was held to answer.

**A PREVIOUS SEPTEMBER 11. 2023, SHOOTING**

Tragically, September 16 represents the <u>second</u> time in a one-week period in which Thomas engaged in a shooting, according to investigators. Indeed, on September 11, 2023, in broad daylight, law enforcement believes Thomas fired at a moving vehicle that was driving west on Turk Street. The San Francisco District Attorney's Office subsequently provided the the government with a report and surveillance connecting Thomas to that incident. That evidence has been produced to the defense and US Probation and will be submitted under seal for the Court's review. The evidence is summarized below.

On September 11, 2023, an unknown person was driving on Turk Street when Thomas drew a firearm and discharged it at the moving vehicle. Multiple witnesses who provided information did not want to provide their contact information for fear of retribution. The reporting officer noted in his report that there was a school nearby (SF City Academy), a community center across the street (Salvation Army Ray and Joan Kroc Center), and this generally occurred within the Tenderloin District, a neighborhood with 3,500 school-aged children living within its boundaries. This location is also in close proximity to where Thomas, less than one week later, murdered the victim described above and shot another in the leg.

Surveillance footage of the incident shows the shooter, dressed in white, walk down the

sidewalk, draw a weapon, fire as a man dressed in black walks in front of him. The shooter then turns around and jauntily walk back in the direction he came from. In the post-shooting footage, his face is clearly distinguishable. Law enforcement identified Thomas as the individual in the footage.



**Suspect Pulls Gun, September 11**



**Suspect (Behind Bystander in Black) Aims Gun, September 11**



**Suspect (Behind Bystander in Black) Fires (See Smoke), September 11**



**Suspect Walks Away, September 11**

**REVISED SENTENCING RECOMMENDATION**

The government recommended 46 months in its original sentencing memorandum to protect the public from further crimes by the defendant, to deter criminal conduct, and to reflect the seriousness of the offense – in other words, to prevent Thomas from possessing firearms and using those firearms to harm others. Milton Thomas once again has proven, tragically, that he is not only determined to possess a gun—despite five firearm-related convictions—but also to use those guns for violent purposes. Thomas's recent, deadly use of a gun lends credence to the evidence in this case that, when Thomas tossed his ghost gun after being confronted by the police, he had just used to violently threaten another individual.

Based on "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "the need for the sentence imposed to afford adequate deterrence to criminal conduct," a high-end sentence would be too low.[1] The public deserves protection, and Thomas should receive a 20% upward variance from the high-end of his range: 68 months in federal prison.

DATED: May 15, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

  /s/ Alethea Sargent
ALETHEA SARGENT
Assistant United States Attorney

---

[1] An upward departure is warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). This can include "[p]rior similar adult criminal conduct not resulting in a criminal conviction." *Id*. at (a)(2)(E).